# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 8, 2012 Session

## STATE OF TENNESSEE v. ERIC LEBRON HALE

**Appeal from the Circuit Court for Marion County**
**No. 8710-A     Thomas W. Graham, Judge**

**No. M2011-02138-CCA-R3-CD - Filed August 31, 2012**

A Marion County Circuit Court jury convicted the defendant, Eric Lebron Hale, of aggravated robbery, and the trial court imposed a sentence of 17 years' incarceration. In this appeal, the defendant challenges the sufficiency of the convicting evidence and contends that the jury instructions provided by the trial court resulted in an improper constructive amendment to the indictment, that a fatal variance existed between the indictment and the proof adduced at trial, that the trial court erred by admitting the testimony of a certain witness, that the trial court committed errors in jury instructions granted and refused, and that the cumulative effect of the errors deprived him of the right to a fair trial. Because the evidence was insufficient to support the defendant's conviction of aggravated robbery as it was charged in the indictment, and because the jury instructions on the offense of aggravated robbery resulted in an improper constructive amendment of the indictment, and because a fatal variance existed between the indictment and proof adduced at trial, the defendant's conviction of aggravated robbery is reversed. In its stead we impose a conviction of the lesser included offense of theft of property valued at $500 or less and remand the case to the trial court for a sentencing hearing on the newly-imposed misdemeanor conviction.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

B. Jeffrey Harmon, District Public Defender; and Philip A. Condra, Assistant District Public Defender, for the appellant, Eric Lebron Hale.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Julia Veal and David McGovern, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

A Marion County Circuit Court jury convicted the defendant of aggravated robbery for taking $359 from cashier Rita Waters at the Whitwell BP convenience store.

At the joint trial of the defendant and co-defendant, Charles Battle, Rita Waters testified that on October 31, 2009, she was working as a cashier at the Whitwell BP when Billy Thomas, whom she had known for "30 something years," came into the store to purchase Halloween candy. She directed Mr. Thomas to the candy, and as she was talking to Mr. Thomas, the defendant came into the store "dressed in camouflage."

Ms. Waters said that she greeted the defendant and asked if he needed any assistance. She described what happened next:

> Then that's when he handed me the envelope. In the envelope it says: Please give me all your money. Well, I still looked at him kind of funny, because it was Halloween, I thought it was a joke. And he started shaking his head. I said okay. Then he took his hand and he pounded – patted his right pocket. Then I looked at him again. I thought he's got something in his pocket. And he shook his head again, and I thought okay. He says, "Give me your money." So I stepped back over to the cash register, which is right here, and I opened the drawer and handed him the money, and put it in the envelope.

Referring to the defendant's patting his side, she said, "I know he actually had something in there, or he wouldn't have done that. Maybe it was a warning signal to me if I didn't do something, you know, I might get hurt or something. . . . I know there was something actually in that pocket, because of the way his action was on his face." Ms. Waters testified that she did not depress the "panic button" because the defendant said, "Don't trigger the alarm." She said that she gave the defendant "between 3 and $400" and that the defendant put the envelope containing the money into his jacket and walked out the door.

Mr. Thomas, she said, had left the store before the encounter and was in the parking lot. After the defendant walked out the door, Ms. Waters triggered the alarm, picked up the telephone, and ran into the parking lot. Once outside, she saw a gold-colored "Town Car[] or big old Cadillac" that she knew to belong to store regular and co-defendant Charles Battle pull from the side area of the store to the store's driveway. She said that Mr. Thomas got into his truck and followed the men.

During cross-examination, Ms. Waters testified that the store was equipped with surveillance cameras, but the cameras were inoperable on the day of the offense. She said that she began her shift with $100 and that $259 was added to the till before the robbery. Ms. Waters conceded that she never saw the defendant in possession of a weapon of any kind and that the defendant made no verbal reference to any weapon and simply patted his pocket. Ms. Waters testified that she never saw the defendant with a knife sheath. Ms. Waters said that a manager at the store used the store's computer to determine that $359 was missing from the till.

Billy Thomas testified that he went to the Whitwell BP on Halloween 2009 to purchase gasoline for his truck and candy for trick-or-treaters. He said that he started the pump and went into the store for the candy. Because the BP did not have what he was looking for, he went back to his truck. He recalled that as he walked out, a black man got out of a car that had pulled up to the front door. Mr. Thomas said that he went back to his truck, and as he turned around to return the hose to the pump, he "[s]aw the gentleman jumped in the car and then Rita came running out behind him." Seeing this, Mr. Thomas "took off" after the "champagne-colored Lincoln Continental." As he followed the car, he telephoned 9-1-1, told them the BP had been robbed, and described the vehicle. He said that he was able to keep up with the vehicle because of traffic in the way. Eventually, however, the car began to pull away from him. He testified that police arrived and began to follow the car. He continued to go in the direction of the police chase, and he saw that the car had been pulled over by police and that the defendant and co-defendant were out of the vehicle.

Jasper Police Department Officer Douglas Henderson testified that he was working as a patrolman on Halloween 2009 when he heard the dispatch about a robbery at the Whitwell BP. Shortly thereafter, he observed a gold Lincoln Town Car drive past the cemetery where he had parked his car. He immediately pulled out behind the car and activated his emergency equipment. Officer Henderson said that the Town Car did not yield to his emergency equipment, so he continued to follow the car until it eventually came to a stop. During the chase, the car drove through a subdivision packed with trick-or-treaters before it came to a stop. Two police vehicles that had entered the subdivision via a second entrance actually blocked the suspect vehicle.

Officer Henderson testified that he approached the car from the passenger's side, "jerked open the door," and "[o]rdered the passenger down on the ground." The passenger, who he identified as the defendant, complied with the order and was immediately handcuffed. Officer Henderson said that he then helped the defendant to his feet and provided him with *Miranda* warnings. In response to being read his rights, the defendant said, "Take me to prison." During a search of the defendant's person, Officer Henderson discovered "a hunting knife in a scabbard that was on his belt" near his right hip. He also

found more than $300 in the defendant's pocket comprised of "some 20s, some10s, a lot of ones, maybe some fives."

At the conclusion of this testimony, the State rested.

Charles Battle, the 60-year-old co-defendant, testified on his own behalf that he had known the defendant's father for years but only met the defendant "[a] night or two before Halloween." On Halloween, the defendant asked him for a ride to Whitwell, telling Mr. Battle that "he had to go pick up some money from the lady at the BP, that she owed him some money." Mr. Battle said that he drove the defendant to the BP and waited in the parking lot while the defendant went into the store. When the defendant came out of the BP, he told Mr. Battle to "go fast." At that point, Mr. Battle testified, he began to suspect that something was amiss, but he nevertheless complied because he was afraid. As they drove away, the defendant told him that he had robbed the BP. Mr. Battle said that he did not stop for police because he was afraid of the police and of the defendant. He said that after his arrest and release from custody, he went to the BP and apologized to Ms. Waters.

During cross-examination, Mr. Battle said that he did not see the defendant with an envelope or with a weapon.

Monica Sha testified that she owned the Whitwell BP and that the money found by police, $359, matched exactly the amount of money taken from the Whitwell BP. She said that this was the first time that her security system had gone out. She testified that Ms. Waters had no access to the security system. She suspected that the manager that she had just fired for stealing money from the store had tampered with the system.

The 39-year-old defendant testified that he was dressed in camouflage on Halloween 2009 because he had been scouting deer for bow hunting. He said that after he finished scouting, he asked Mr. Battle, whom he had known for "a couple of days," for a ride to Whitwell. The defendant claimed that his purpose in going to Whitwell was to get money from Ms. Waters that she owed him for marijuana. He said that when he walked into the BP, Ms. Waters, who "already knew [he] was coming to get the money," "took the money out of the cash register and gave it to" him. The defendant denied giving Ms. Waters a note demanding the money and said that Ms. Waters placed the money into his hand and did not put it into an envelope. The defendant testified that he put the money in his pocket and left the store. The defendant claimed that he did not speak to Ms. Waters at all during their encounter and that he made no attempt to conceal his face because he had "no reason to." He said that when he returned to Mr. Battle's car, he told Mr. Battle, "Let's go. . . . I'm ready." The defendant testified that when he saw Mr. Thomas' truck following them, he thought that his drug dealing had been discovered by the drug task force. He said that before

-4-

he went to Whitwell, he had "[l]ike $160, $170" in cash in his pocket. The defendant said that he thought he had been set up by Ms. Waters.

Based upon this proof, the jury convicted the defendant of aggravated robbery.[1] Following a sentencing hearing, the trial court imposed a Range II sentence of 17 years' incarceration.

The defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal. In this appeal, he contends that the evidence was insufficient to support his conviction, that the trial court improperly amended the indictment without the defendant's consent, that the trial court erred by redacting the indictment when providing its instructions to the jury, that there was a fatal variance between the indictment and the proof adduced at trial, that the trial court erred by admitting the testimony of Officer Henderson, that the trial court erred by failing to provide jury instructions on missing witnesses and accomplice testimony and by providing a jury instruction on flight, and that cumulative errors deprived him of the right to a fair trial. We consider each claim in turn.

*I. Sufficiency*

The defendant first asserts that the evidence adduced at trial was insufficient to support his conviction, claiming that the State failed to establish that he used or displayed a deadly weapon, that he took the money from Ms. Waters by violence, or that the property taken was owned by "Rita Waters dba Whitwell BP." The State contends that the evidence supported the verdict of the jury.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are

---

[1]Mr. Battle, originally charged with aggravated robbery, felony reckless endangerment, and felony evading arrest, was convicted only of reckless driving as a lesser included offense of evading arrest.

resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case, "[a]ggravated robbery is robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1) (2006).[2] Robbery, as charged in this case, "is the intentional or knowing theft of property from the person of another by violence." *Id.* § 39-13-401(a).[3] "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a).

## *A. Deadly Weapon*

The defendant alleges that the evidence was insufficient to support his conviction because the State failed to establish that the defendant used or displayed an item in a fashion designed to lead the victim to reasonably believe it was a deadly weapon, the modality of aggravated robbery as charged in the present case. The State contends that "the defendant's action of patting his pocket to reinforce his demand for money led Rita Waters to believe he was armed."

The aggravated robbery statute clearly contemplates the scenario in which a robbery is accomplished not by the brandishing of an actual deadly weapon but by some action on the part of the defendant to lead the victim to reasonably believe that the defendant is armed with a deadly weapon. This court has affirmed convictions of aggravated robbery when the defendant's demand for money coupled with his maintaining a hand in his pocket, even when the hand was not positioned to evoke the image of a gun or any other weapon, led the victim to reasonably believe the defendant was armed, often by verbally threatening to harm the victim. *See, e.g.*, *State v. Aaron Cooper*, No. 01C01-9708-CR-00368, slip op. at 7 (Tenn. Crim. App., Nashville, Sept. 29, 1998) (defendant "held his hand in the waistband of his pants 'as if he had a weapon,' and said . . . 'Don't make me have to hurt you'"); *State v. Frederick Corlew*, No. M2001-00842-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App.,

---

[2]The indictment in this case alleges that the defendant committed robbery "by violence and accomplished with a deadly weapon, or display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon."

[3]See fn. 2.

Nashville, Nov. 1, 2002) (defendant kept "his right hand . . . in his right pants pocket as he came in and [it] remained there as he walked past the cash register and even after he came around the counter and was standing with the victim, demanding her to 'open the register'"). We have observed that the "common threads" in those cases where no actual deadly weapon was displayed "are: 1) a hand concealed in an article of clothing; and 2) a threat – express or implied – that caused the victim to 'reasonably believe' the offender had a deadly weapon and was not opposed to using it." *State v. Monoleto D. Green*, No. M2003-02774-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Nashville, May 5, 2005).

In this case, the defendant did not keep his hand in his pocket or under his clothing during his encounter with Ms. Waters and did not communicate any verbal threat to harm her. That being said, the defendant, dressed entirely in camouflage, patted his right pocket, shook his head, and said, "Give me your money," after Ms. Waters initially did not comply with his written demand that she give him the money in the cash register. Ms. Waters testified that the defendant's patting his pocket as well as his demeanor led her to believe that he was armed and that she complied with his demand for money because she was afraid that she "might get hurt or something" if she did not comply. The absence of a verbal threat of harm or statement indicating possession of a deadly weapon is not, in our view, automatically fatal to an aggravated robbery prosecution in which the weapon is not actually seen when the non-verbal evidence of deadly weapon possession is otherwise sufficient to support the conviction. *People v. Jolly*, 502 N.W.2d 177, 182 (Mich. 1993) ("The existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article."). It is our view that the defendant's dress, demeanor, demand for money, and patting his pocket were sufficient to support the jury's finding that he displayed an article in a manner fashioned to lead Ms. Waters to reasonably believe that he possessed a deadly weapon.

## *B. Violence*

The defendant asserts that the State failed to establish that he accomplished the crime by violence, as alleged in the indictment. The State does not address this part of the defendant's challenge to the sufficiency of the evidence, stating only that "the proof was sufficient to permit the jury to infer that the defendant accomplished the robbery by threat of force accompanied by a deadly weapon."

Simple robbery, and aggravated robbery by extension, may be accomplished by either violence or putting the victim in fear. *See id.* § 39-14-401(a); -402(a). In this case, however, the indictment charged that the defendant committed the robbery by violence

against Ms. Waters. Violence, as used in the robbery statute, is afforded its "plain meaning, i.e., physical force that is unlawfully exercised or exerted so as to injure, damage or abuse." *State v. Fitz*, 19 S.W.3d 213, 215 (Tenn. 2000). Unfortunately, the trial court erroneously instructed the jury that it could convict the defendant on a finding that he committed a theft "by the use of violence or putting the person in fear." The record is clear, however, that the indictment alleged only the "by violence" mode of aggravated robbery. As such, our consideration of the sufficiency of the evidence is confined to that modality. At trial, Ms. Waters testified that the defendant entered the Whitwell BP, handed her an envelope demanding money, and patted his pocket in a manner that caused her to believe that he possessed a weapon. Although "pointing a deadly weapon at the victim constitutes 'violence' as used in the offense of robbery pursuant to Tenn[essee] Code Ann[otated] § 39-13-401," *State v. Allen*, 69 S.W.3d 181, 185 (Tenn. 2002), the defendant did not point anything at Ms. Waters. Ms. Waters candidly admitted that she did not see any weapon and that the defendant did not verbally threaten her with physical harm. Given that there was no physical force exerted against Ms. Waters by the defendant and that the defendant did not point or brandish a weapon at Ms. Waters, the evidence failed to establish that the robbery was committed by violence. Accordingly, the evidence was insufficient to support the defendant's conviction of aggravated robbery.

Moreover, in the absence of proof of violence as alleged in the charging instrument, the evidence was insufficient to support a conviction of the lesser included offense of robbery. The proof did sufficiently establish, however, that the defendant took $359 that belonged to Whitwell BP without consent to do so. Thus, we reduce the defendant's conviction of aggravated robbery to a conviction of theft of property valued at $500 or less.

## C. Ownership

Finally, the defendant avers that the evidence was insufficient to support his conviction because the State failed to establish ownership of the property taken as it was alleged in the indictment. The State that asserts proof of ownership of the property taken is not essential to a conviction of aggravated robbery. Although this court has said in commenting on the theory of robbery that "[i]t is the 'manner in which property is taken, rather than to whom it lawfully belongs, [which] is the issue in robbery offenses,'" *State v. Maurice Leonard and Kenneth Shondale Mason*, No. M2006-00136-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App, Nashville, Mar. 27, 2007) (quoting *State v. Anthony Murff*, No. W2001-01459-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, June 11, 2002) (citing *State v. Cannon*, 661 S.W.2d 893, 899 (Tenn. Crim. App. 1983)), theft, which is included in every charge of robbery, requires proof that the property was taken without the effective consent of the owner and with the intent to deprive the owner of the property, *see* T.C.A. §

39-14-103.

Here, as noted above, the indictment charged that the defendant took the property of "Rita Waters dba Whitwell BP." The State offered testimony from Ms. Sha, the owner of the Whitwell BP, that the defendant did not have her consent to take the $359, and the defendant himself testified that he intended to keep the money. Similarly, Ms. Waters testified that she gave the defendant money from the cash register only because she believed him to be armed and feared for her safety should she fail to comply with his demand for money.

That the State failed to prove the business relationship between Ms. Waters and Whitwell BP does not result in an insufficiency of the evidence because proof of that relationship was not a necessary element of aggravated robbery. Our criminal Code defines the term "owner" as "a person, other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property." T.C.A. § 39-11-106(a)(26). "Also, an owner's possession of the property may be 'actual or constructive.'" *State v. March*, 293 S.W.3d 576, 592 (Tenn. Crim. App. 2008) (citing T.C.A. § 39-14-401(3); *State v. Joel Christian Parker*, No. M2001-00773-CCA-R3-CD (Tenn. Crim. App., Nashville, Dec. 18, 2002); *State v. Gordon Scott Katz*, No. E1999-01220-CCA-R3-CD (Tenn. Crim. App., Knoxville, Oct. 2, 2000)). Under the circumstances of this case, ownership sufficient to satisfy the requirements of the theft statute could lie with either Ms. Waters or with Ms. Sha operating via the tradename Whitwell BP. *March*, 293 S.W.3d at 592 (citing *Stafford v. State*, 489 S.W.2d 46, 47 (Tenn. Crim. App. 1972)).

Because the proof established that the defendant took the money without the owner's consent and with an intent to deprive the owner of the property, we have no trouble imposing a conviction of theft of property valued at $500 or less.

*II. Indictment*

The defendant contends that the jury instructions provided by the trial court resulted in constructive amendment of the indictment and that a fatal variance existed between the offense alleged in the indictment and the proof adduced at trial. We begin our consideration of these issues by noting that the problems in this case, including the deficiency in the proof requiring reversal of the conviction of aggravated robbery, can be attributed directly to the poor drafting of the indictment in this case.

First, the indictment failed to allege that the aggravated robbery was

-9-

accomplished by "putting in fear" and instead alleged only that it was accomplished by violence, despite that Ms. Waters, even in her earliest account of the offense provided to officers on the scene, did not allege any fact that would support a finding of violence. Despite that the indictment alleged only the "violence" mode of aggravated robbery, the trial court instructed the jury that it could convict the defendant on a finding that he accomplished the theft by "putting in fear."  As we indicated during our sufficiency analysis, however, because the indictment charged only that the defendant took the property "by violence," evidence that the defendant took the money by putting Ms. Waters in fear was insufficient to support his conviction.  *See Fitz*, 19 S.W.3d at 215 ("The indictment in this case charged only that the offense was committed by violence - it did not charge that the offense was committed by putting the victim in 'fear.'  Accordingly, even though in many robbery cases the evidence will satisfy both prongs, we address in this case only the definition of 'violence' and whether the evidence satisfies that definition.").

Second, for reasons that are not clear from the record, the indictment alleged that the robbery was perpetrated against "Rita Waters dba Whitwell BP."  We speculate that the inclusion of the "dba Whitwell BP" language was an attempt, albeit inept, to address the ownership of the money taken from Ms. Waters.  Strictly speaking, the allegation in the indictment was incorrect because Ms. Waters was not doing business as Whitwell BP; she was an employee of Ms. Sha, and we glean from Ms. Sha's testimony that her business was a sole proprietorship doing business as Whitwell BP.  As we will explain below, the inclusion of this completely unnecessary language led to yet another jury instruction error by the trial court.

Although we have dispensed with the strict pleading requirements for indictments, *see State v. Carter*, 121 S.W.3d 579, 587 (Tenn. 2003) (citing *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997)), standards still exist.  Prosecutors should take care when formulating indictments to ensure that the offense alleged matches the proof that can be adduced at trial.  *State v. Goodson*, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001) ("not only must the government prove the crime it charges, *it must charge the crime it proves*") (emphasis added).  Here, the proof sufficiently showed that the defendant committed aggravated robbery by putting Ms. Waters in fear, but the State charged the defendant with aggravated robbery solely by violence.

Here, the indictment alleged that the defendant

did unlawfully, intentionally, and knowingly obtain property, good and lawful U.S. currency, from the person of **Rita Waters dba Whitwell BP**, by violence and accomplished with a deadly weapon, or display of any article used or fashioned to lead the

victim to reasonably believe it to be a deadly weapon with the intent to deprive the said Rita Waters dba Whitwell BP of the property without Rita Waters dba Whitwell BP effective consent.

The proof adduced at trial established that the defendant took $359 dollars from Ms. Waters, an employee of the Whitwell BP, without the effective consent of either Ms. Waters or Ms. Sha, the owner of the Whitwell BP, by putting Ms. Waters in fear. The trial court instructed the jury that it could convict the defendant of aggravated robbery if it found the following beyond a reasonable doubt:

(1) that the defendant knowingly obtained or exercised control over property owned by Whitwell BP, and
(2) that the defendant did not have the owner's effective consent; and
(3) that the defendant intended to deprive the owner of the property, and
(4) that the defendant took such property from the person of another by the use of violence or putting the person in fear; and
(5) that the defendant took such property intentionally and knowingly; and
(6) that the defendant accomplished this act with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe it to be a deadly weapon.

A variance results when the evidence at trial does not correspond to the offense alleged in the charging instrument. *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). In many such cases, the evidence establishes the commission of an offense different from the offense alleged in the charging instrument. *See id.* The variance rule is predicated upon the theory that an accused cannot be charged with one offense and convicted of a completely different offense. *See id.*

In the past, Tennessee had followed "a rather stringent variance rule, and if a person or thing necessary to be mentioned in an indictment is described with greater particularity than is requisite, such person or thing must be proved exactly as described in the indictment." *Bolton v. State*, 617 S.W.2d 909, 910 (Tenn. Crim. App. 1981). "The policy now followed in this and in most other jurisdictions," however, "is that before a variance will be held to be fatal it must be deemed to be material and prejudicial." *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984). Moreover,

-11-

[a] variance between an indictment and the proof in a criminal case is not material where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense.

*Id.*

Generally, unless the matters alleged in the indictment are essential elements of the crime, they may be disregarded in analyzing the sufficiency of the convicting evidence. *Church v. State*, 333 S.W.2d 799, 809 (Tenn. 1960).

When the essential elements of an offense alleged in an indictment differ from the facts established at trial, the variance has been described as resulting in a constructive amendment.

[A] constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. . . . In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment. . . . If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, "the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant."

*Goodson*, 77 S.W.3d at 244. Again, "not only must the government prove the crime it charges, it must charge the crime it proves" and "after an indictment has been returned, its charge may not be broadened or changed except by action of the grand jury." *Id.* (citations omitted). A constructive amendment of the indictment, not consented to by the defendant, by definition results in a fatal variance because it does not accomplish the "overriding purpose of notice to the accused" required of an indictment. *See State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000).

*A. Amendment*

The defendant contends that the trial court erred by amending the indictment

-12-

without his consent. He claims that the trial court amended the indictment by omitting any reference to Ms. Waters in its instructions to the jury and listing Whitwell BP as the sole victim of the crime alleged. The State contends that the defendant has waived plenary review of this issue by failing to include the transcript of the hearing on the motion for new trial in the record on appeal. In the alternative, the State contends that the jury instructions did not have the effect of constructively amending the indictment.

We cannot say that the trial court's omission of Ms. Waters' name from the jury instructions resulted in a constructive amendment of the indictment because the omission did not have the effect of modifying an element of the crime charged. As discussed earlier, both Ms. Waters and Whitwell BP satisfied the definition of owner as that term is defined relevant to theft and, by extension, aggravated robbery. Moreover,

> aggravated robbery is not classified as an offense based upon its perpetration against certain classes of individuals . . . . In other words, the identity of the victim does not serve to identify the crime. Thus, the identity of the victim is not an essential element of the crime, and the charging instrument is not defective merely for failing to identify the victim.

*State v. Clark*, 2 S.W.3d 233, 235 (Tenn. Crim. App. 1998). If the identity of the victim need not be part of the charging instrument, then the omission of Ms. Waters' name cannot be said to operate as a constructive amendment of the indictment.

That being said, we perceive that a part of the trial court's instructions to the jury did operate as a constructive amendment of the indictment. The indictment in this case alleged only the "by violence" mode of robbery and did not include an allegation that the defendant committed the crime by "putting in fear." Despite the particularity of the indictment, the trial court instructed the jury that it could convict the defendant of aggravated robbery by "*the use of violence or putting the person in fear*." Because this instruction modified an essential element of the charged crime in a manner that permitted the jury to convict the defendant "on a ground not charged in the indictment," *see Goodson*, 77 S.W.3d at 244, it resulted in a constructive amendment of the indictment. By alleging a specific mode of liability, the State was obliged to prove that mode of liability and was precluded from achieving a conviction under a mode of liability different than that alleged in the indictment. *See, e.g.*, *State v. Paul Richardson*, W2008-02506-CCA-R3-CD (Tenn. Crim. App., Jackson, Sept. 29, 2010) (constructive amendment and fatal variance occurred when the trial court instructed the jury on aggravated assault by intentionally and knowingly causing another to reasonably fear imminent bodily injury but the indictment charged the defendant with aggravated assault by knowingly causing bodily injury to another), *perm. app*

*denied* (Tenn. Mar. 29, 2011); *State v. Jamie Roskom*, M2006-00764-CCA-R3-CD (Tenn. Crim. App., Nashville, Feb. 9, 2007) (constructive amendment and fatal variance occurred in prosecution of violation of the sexual offender registry act when indictment alleged failure to timely register but proof showed the defendant's failure to report to local law enforcement agency within a week of his birthday); *State v. Atta Najjar*, W2003-00329-CCA-R3-CD (Tenn. Crim. App., Jackson, Jan. 21, 2004) (constructive amendment and fatal variance occurred when jury instruction in aggravated rape case allowed conviction based upon a theory of aggravated rape not alleged in the indictment), *perm. app denied* (Tenn. June 1, 2004).

As this court explained in *Goodson*, "reversal is automatic," *Goodson*, 77 S.W.3d at 244, and we reverse the conviction of aggravated robbery.

We have already concluded that the defendant's conviction of aggravated robbery must be reversed and have imposed a conviction of the lesser included offense of theft of property valued at $500 or less. In our view, the imposition of a conviction of theft of property valued at $500 or less is the appropriate disposition even in light of our finding that the trial court's instruction resulted in an improper constructive amendment of the indictment.[4]

First, the indictment itself, although poorly drafted, is not void, and our ruling regarding its constructive amendment does not render it so. The term "constructive amendment" as applied by the courts to trying a case on elements different from those expressed in the charging instrument is somewhat misleading because the term implies that an amendment effectively occurred when the opposite is actually the import of the term. Thus, our ruling does not touch upon the validity of the initial charging instrument. Second, that instrument, by charging aggravated robbery, necessarily charged the defendant with theft of property valued at $500 or less, and that lesser charge was unaffected by the trial court's erroneous instruction. Third, ample proof supports a conclusion that the defendant committed the offense of theft of property valued at $500 or less, and the jury necessarily so found. Finally, the imposition of a theft conviction does not result in the defendant's standing convicted of an offense not charged in the indictment.

---

[4]This court has been inconsistent in the disposition of cases where convictions are reversed on the basis of a constructive amendment of the indictment. *See, e.g.*, *Goodson*, 77 S.W.3d at 245 (conviction reversed); *Paul Richardson*, slip op. at 14 (conviction reversed and vacated); *Jamie Roskom*, slip op. at 5 (conviction reversed and case dismissed); *Atta Najjar*, slip op. at 6 (conviction reversed and case remanded for new trial).

## B. Variance

The defendant also contends that a fatal variance existed "between the allegation of ownership of money and the proof at trial." As we discussed more fully above, both Ms. Waters and Whitwell BP satisfied the definition of "owner" as that term is used in the Code. The erroneous business relationship alleged in the indictment was not an element of the crime charged and, as a result, can be deemed surplusage.

> In this context, 'surplusage' denotes surplus language in the charging instrument. In certain circumstances, such surplusage, in and of itself, may implicate insufficiency of the charging instrument as opposed to insufficiency of the convicting evidence; however, an indictment is not defective because of the inclusion of surplusage if, after eliminating the surplusage, the offense is still sufficiently charged.

*March*, 293 S.W.3d at 588 (citing *State v. Culp*, 891 S.W.2d 232, 236 (Tenn. Crim. App. 1994)). Here, removal of the erroneous language regarding the business relationship between Ms. Waters and the Whitwell BP would not result in a deficient charging instrument. The defendant is not entitled to relief on this issue.

We have already discussed the reversible error attendant to the trial court's instructing the jury on the "putting in fear" mode of committing aggravated robbery, but we observe that a fatal variance existed between the indictment, which charged aggravated robbery solely by violence, and the proof, which established that the defendant committed the crime by putting in fear. The defendant's conviction of aggravated robbery is reversible on this basis alone, had we not already reversed it for an insufficiency of the evidence and an inappropriate constructive amendment of the indictment. That being said, we remain satisfied that the appropriate disposition is the imposition of a conviction of theft of property valued at $500 or less.

## III. Testimony of Officer Henderson

The defendant also challenges the testimony of Officer Henderson. First, he claims that the trial court erred by permitting Officer Henderson to testify in violation of Rule 615 of the Tennessee Rules of Evidence. Second, he asserts that the trial court erred by allowing Officer Henderson to testify about the statement that the defendant made following his arrest. The State contends that there is no merit to either claim.

*A. Rule 615*

The defendant avers that the trial court should not have permitted Officer Henderson to testify at trial because he had remained seated at counsel table with the prosecutor during the trial without having been designated "prosecutor" by the State. He claims that because Officer Jim Nunley's name was included on the indictment, only Officer Nunley could have been designated "prosecutor" and permitted to sit at counsel table during the trial. The State contends that the defendant waived consideration of this issue by failing to lodge a timely objection and by failing to include the transcript of the hearing on the motion for new trial. The State also contends there was no error and, in the alternative, that any error would have been harmless.

Rule 615 of the Tennessee Rules of Evidence governs the exclusion of witnesses during a trial or hearing:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

Tenn. R. Evid. 615. The rule permits "the prosecuting attorney [to] designate a crime victim, a relative of a crime victim, or an investigating officer" to remain in the courtroom and even at counsel table. *See id.*, Advisory Comm'n Comments. "The trial court may, as a sanction, exclude the testimony of a witness who hears other testimony while subject to a sequestration order." *State v. Black*, 75 S.W.3d 422, 424 (Tenn. Crim. App. 2001). "The generally accepted procedure in Tennessee . . . is for the court to hold a jury-out hearing to determine both the facts of the violation and whether a party was prejudiced by the violation." Neil P. Cohen, et al., *Tennessee Law of Evidence* § 615 [11] [e] (4th ed. 2000). When a

sequestration rule violation is raised on appeal, this court considers the seriousness of the violation and the prejudice, if any, suffered by the defendant. *Harris*, 839 S.W.2d at 68-69. In the face of a sequestration rule violation complaint, "[t]he decision to exclude or allow the testimony is a matter within the discretion of the trial court, subject to a showing of abuse and prejudice to the complaining party." *Black*, 75 S.W.3d at 424-25.

Initially, we note that the defendant has failed to cite any authority for his proposition that only Officer Nunley could have been designated by the State because his name appeared as prosecutor on the indictment. Moreover, we can find no authority so limiting the State's ability to designate a person to sit at counsel table. In addition, although the defendant objected to Officer Henderson's being so designated because he was not the lead investigator in the case, Rule 615 imposes no such requirement. Finally, the defendant has failed to establish that, assuming a violation of the rule, the trial court abused its discretion by permitting Officer Henderson to testify. The defendant is not entitled to relief on this issue.

## B. Defendant's Statement

The defendant contends that Officer Henderson should not have been permitted to convey the defendant's statement, "Take me to prison,"[5] because although Officer Henderson provided the defendant with *Miranda* warnings, the officer did not ask the defendant whether he wanted to waive those rights. The State asserts that the defendant waived plenary review of this issue by failing to seek suppression of the statement prior to trial.

We agree with the State that the defendant waived consideration of this issue by failing to seek pretrial suppression of the statement. A motion to suppress evidence must be filed before trial. Tenn. R. Crim. P. 12(b)(2)(C) ("The following must be raised prior to trial: . . . [m]otions to suppress evidence . . ."). "Failure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver." Tenn. R. Crim. P. 12(f). In addition, the defendant has waived consideration of this issue by failing to support it with citation to relevant authorities. *See* Tenn. R. App. P. 27(a)(7) (stating that the appellant's brief must contain an argument, "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate

---

[5]The record establishes that the defendant actually said, "Take me back to prison," but the trial court ordered the statement redacted so that the jury would not infer that the defendant had previously spent time in prison.

references to the record . . . relied on; and . . . for each issue, a concise statement of the applicable standard of review"); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

Moreover, the record more than adequately establishes that the defendant's statement was a spontaneous admission following Officer Henderson's recitation of the *Miranda* warnings. Nothing more was required of the officer as the defendant clearly evinced a desire to waive his right to remain silent by not remaining silent.

## IV. *Jury Instructions*

The defendant raises three challenges to the instructions provided by the trial court: (1) the trial court erred by refusing to provide the missing witness instruction relative to Officer Jim Nunley and Jasper Police Department Chief Ronnie Davis; (2) the trial court erred by refusing to provide an accomplice instruction relative to Ms. Waters; and (3) the trial court erred by providing an instruction on flight. The State contends that the trial court committed no error in its instructions to the jury.

An accused's constitutional right to trial by jury, *see* U.S. Const. amend VI; Tenn. Const. art. 1, § 6, encompasses a right to a correct and complete charge of the law, *see State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990). The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see Teel*, 793 S.W.2d at 249; *see also* Tenn. R. Crim. P. 30.

The legal accuracy of the trial court's instructions is a question of law subject to de novo review. *See Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 149 (Tenn. 2007). The propriety of a given instruction is a mixed question of law and fact to be reviewed de novo with a presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

## A. *Missing Witness Instruction*

The defendant claims that the trial court should have provided a missing witness instruction for Officer Nunley and Chief Davis because Officer Nunley was listed as the prosecutor on the indictment and because Officer Henderson testified that he had turned the knife, sheath, and money recovered from the defendant's person following his arrest to Chief Davis. The State contends that because the witnesses were equally available to both parties, the missing witness rule was inapplicable.

The prosecution in a criminal case is "under no obligation to produce every possible witness." *Hicks v. State*, 539 S.W.2d 58, 59 (Tenn. Crim. App. 1976). In the present case, the defendant sought a missing witness instruction because the State declined to call all witnesses listed on the indictment. *See* T.C.A. § 40-17-106 ("It is the duty of the district attorney general to endorse on each indictment or presentment . . . the names of the witnesses as the district attorney general intends shall be summoned in the cause . . . .").

The "missing witness rule" as recognized in Tennessee provides that

a party may comment about an absent witness when the evidence shows 'that the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial.

*State v. Bough*, 152 S.W.3d 453, 463 (Tenn. 2004) (quoting *Delk v. State*, 590 S.W.2d 435, 440 (Tenn. 1979)). "The missing witness rule is premised on the idea that the absent witness, 'if produced, would have made an intelligent statement about what was observed.'" *Dickey v. McCord*, 63 S.W.3d 714, 722 (Tenn. Ct. App. 2001) (quoting *State v. Francis*, 669 S.W.2d 85, 89 (Tenn. 1984)).

The "missing witness" or "absent material witness" instruction provides:

When it is within the power of the [S]tate or the defendant to produce a witness who possesses peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is available fails to call such witness, an inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness. Whether there was such a witness and whether such an inference has arisen is for you to decide and if so, you are to determine what weight it shall be given.

T.P.I.-Crim. 42.16 (15th ed. 2011). Before the instruction may be given, the party requesting it must establish "that 'the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial.'" *State v. Bigbee*, 885 S.W.2d 797, 804 (Tenn. 1994) (quoting *State v. Middlebrooks*, 840 S.W.2d 317,

334-35 (1992)) (internal citation and quotation marks omitted). To justify a missing witness instruction, "the witness who was not called must not have been equally available to both parties." *See State v. Boyd*, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992) (citing *State v. Overton*, 644 S.W.2d 416, 417-18 (Tenn. Crim. App. 1982); *Bolin v. State*, 472 S.W.2d 232, 235 (Tenn. Crim. App. 1971)); *State v. Eldridge*, 749 S.W.2d 756, 758 (Tenn. Crim. App. 1988).

Here, the trial court refused to provide the missing witness instruction for Officer Nunley and Chief Davis because the witnesses were equally available to both parties. The record supports this ruling. Moreover, we reject, as has every other court to consider the issue, the defendant's argument that denial of the missing witness instruction when witnesses are equally available to both parties improperly shifts the burden of proof.

*B. Accomplice Instruction*

The defendant asserts that the trial court erred by failing to provide an instruction on accomplice testimony relative to Ms. Waters. The State contends that the trial court did not err because there was no proof that Ms.Waters was an accomplice to the aggravated robbery.

The defendant testified at trial that he went to the Whitwell BP to get payment of $200 that Ms. Waters owed him for marijuana and that she took the money from the cash register to pay him. Defense counsel requested an instruction regarding accomplice testimony solely on the basis of this testimony, which, he argued, "fairly raised" Ms. Waters' role as an accomplice. The trial court refused to provide the instruction.

"It is well-settled in Tennessee that a defendant cannot be convicted solely upon the uncorroborated testimony of an accomplice." *State v. Bough*, 152 S.W.3d at 464 (citing *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001); *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964)). By way of explanation, our supreme court has stated:

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to

-20-

connect the defendant with the commission of the crime charged.
It is not necessary that the corroboration extend to every part of
the accomplice's evidence.

*Bane*, 57 S.W.3d at 419 (quoting *Bigbee*, 885 S.W.2d at 803); *see also State v. Fowler*, 373 S.W.2d 460, 463 (Tenn. 1963) (citations omitted).

"An accomplice is one who knowingly, voluntarily, and with common intent participates with the principal offender in the commission of a crime." *Bough*, 152 S.W.3d at 464 (citing *State v. Lewis*, 36 S.W.3d 88, 94 (Tenn. Crim. App. 2000); *Conner v. State*, 531 S.W.2d 119, 123 (Tenn. Crim. App. 1975)). "[T]he test for whether a witness is an accomplice is whether the witness could have been convicted of the offense." *Bough*, 152 S.W.3d at 464.

In this case, there was no proof that Ms. Waters "knowingly, voluntarily, and with common intent" participated with the defendant in the aggravated robbery of the Whitwell BP. The defendant's testimony, if believed, could have established that Ms. Waters took money from the Whitwell BP without Ms. Sha's consent, proof, at best, that she committed a theft but not aggravated robbery. In consequence, the trial court did not err by refusing to provide a jury instruction on accomplice testimony. Moreover, even if the failure to provide the accomplice instruction was error, it was harmless beyond a reasonable doubt. The jury obviously did not credit the defendant's testimony.

*C. Flight*

The defendant contends that the trial court should not have instructed the jury that it could infer guilt from his flight from the Whitwell BP because the defendant was not driving and did not provide Mr. Battle any instruction on where to go. The State asserts that the giving of the instruction on flight was appropriate.

To properly charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction. *State v. Berry*, 141 S.W.3d 549, 588 (Tenn. 2004). Sufficient evidence supporting such instruction requires "'both a leaving of the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community.'" *State v. Payton*, 782 S.W.2d 490, 498 (Tenn. Crim. App. 1989) (quoting *Rogers v. State*, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970) (citing 22A C.J.S. Criminal Law § 625))). Our supreme court has held that "[a] flight instruction is not prohibited when there are multiple motives for flight" and that "[a] defendant's specific intent for fleeing a scene is a jury question." *Berry*, 141 S.W.3d at 589.

Here, the evidence established that after the aggravated robbery was complete, the defendant returned to Mr. Battle's car and ordered Mr. Battle to drive away quickly. Although Mr. Battle conceded that the defendant did not direct him where to go during the ensuing police chase, he maintained that the defendant repeated that he should drive fast. The defendant himself admitted fleeing from police although he claimed that he did so because he believed he was going to be apprehended by the drug task force. Under these circumstances, the trial court did not err by providing an instruction on flight.

*V. Other Errors*

In his final issue, which the defendant captions, "Cumulative errors denying defendant's right to a fundamentally fair trial," the defendant points out that he "detailed 18 errors committed during the course of the trial" in his motion for new trial and then fills two pages with argument related to the prosecutor's description in closing argument of the knife possessed by the defendant. Then he argues that Mr. Battle's "trial testimony was at best misleading and at worst perjurious," citing in support of his argument Mr. Battle's own testimony during his sentencing hearing on his conviction of reckless driving.

Despite the caption of his argument, the defendant does not address the cumulative effect of the alleged errors at his trial and cites no authority in support of his caption. Accordingly, any review of the cumulative effect of any alleged errors has been waived.

With regard to his claim related to Mr. Battle's testimony, the defendant does not allege the nature of the error he claims was occasioned by Mr. Battle's trial testimony, does not posit any argument for relief, and does not cite any relevant authority. Moreover, the only material offered in support of his claim of error is the transcript of Mr. Battle's testimony at Mr. Battle's own sentencing hearing, which is not a part of the record in this case. Although the transcript is appended to the defendant's brief, we remind the defendant that items appended to an appellate brief but not made a part of the record cannot be considered by this court. *See State v. Matthews*, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990) ("Rule 28, Tennessee Rules of Appellate Procedure, does not contemplate attaching a transcript of proceedings to a brief when the transcript has not been made a part of the record."); *see also James Dubose v. Tony Parker, Warden and State of Tennessee*, W2005-01320-CCA-R3-HC, slip op. at 5 ("[D]ocuments attached to appellate briefs but not certified into the record cannot be considered as part of the record on appeal."). Under these circumstances, the defendant has waived consideration of any issue attendant to Mr. Battle's testimony.

With regard to his claim of prosecutorial misconduct during closing argument,

the defendant complains that the prosecutor should not have been permitted to argue "specifics about a knife that was never introduced into evidence and no photographs of the knife were ever introduced by the State." The State does not address the defendant's claim of prosecutorial misconduct and instead focuses its argument on the lack of cumulative error.

Despite the discretion afforded trial courts in determining the propriety of closing argument, judges must nevertheless take care to restrict improper argument. *State v. Hill*, 333 S.W.3d 106, 130 (Tenn. Crim. App. 2010) (citing *Sparks v. State*, 563 S.W.2d 564, 569-70 (Tenn. Crim. App. 1978)). Because of the State's unique role in a criminal case, the State, in particular, "must refrain from argument designed to inflame the jury and should restrict its commentary to matters in evidence or issues at trial." *Id.* We have consistently held that closing argument for both parties "'must be temperate, must be predicated on evidence introduced during the trial of the case, and must be pertinent to the issues being tried.'" *Id.* (quoting *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978)). Even inappropriate closing argument will not warrant a new trial unless it was so inflammatory or improper as to affect the verdict. *Id.* (quoting *Harrington v. State*, 385 S.W.2d 758, 759 (1965)). When determining the propriety of closing argument, this court considers the following factors:

> (1) The conduct complained of viewed in the context and in light of the facts and circumstances of the case[;]
> (2) [t]he curative measures undertaken by the court and the prosecution[;]
> (3) [t]he intent of the prosecutor in making the improper statements[;]
> (4) [t]he cumulative effect of the improper conduct and any other errors in the record [; and]
> (5) [t]he relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

During the rebuttal portion of his closing argument, the prosecutor referred to the knife seized from the defendant as "an 11-inch hunting knife," and the defendant objected on the basis that there was no proof in the record to support that description. The trial court instructed the jurors that they should "rely on [their] own memory of the exact facts in the case, so the attorney is suppose[d] to stay within the facts." The prosecutor stated that he "was just going based on how long [the defendant] pointed out."

In our view, the prosecutor's remark, although arguably objectionable for arguing facts outside the record, was not so improper as to have affected the outcome of the trial and can be classified as harmless. Accordingly, the defendant is not entitled to relief on

this issue.

*Conclusion*

Because the evidence was insufficient to support the defendant's conviction of aggravated robbery as charged in the indictment, we reverse that conviction and impose a conviction of the lesser included offense of theft of property valued at $500 or less. This disposition is also warranted because the trial court erroneously instructed the jury that it could convict the defendant of aggravated robbery on a finding that the defendant committed the robbery by putting the victim in fear, which resulted in a constructive amendment of the indictment, and because there was a variance between the offense as charged in the indictment and the proof adduced at trial. Accordingly, the conviction of aggravated robbery is reversed, a conviction of theft of property valued at $500 or less is imposed, and the case is remanded for a new sentencing hearing on the misdemeanor theft conviction.

_____
JAMES CURWOOD WITT, JR., JUDGE

-24-